IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JACQUELINE FIELDS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 17-4133 |

O P I N I O N

JACOB P. HART                                                  DATE: August 14, 2019
UNITED STATES MAGISTRATE JUDGE

      Jacqueline Fields filed this action under 42 U.S.C. 405(g) to obtain review of the decision of the Commissioner that she was liable for an overpayment of her Disability Insured Benefits ("DIB"). She has filed a Request for Review to which the Commissioner has responded. As set forth below, Fields's Request for Review will be granted in part, and the matter remanded for a specific finding as to whether an overpayment occurred, and – if so – how it occurred, and whether requiring repayment would defeat the purpose of the Social Security Act, or be against equity and good conscience.

Factual and Procedural Background

      On November 20, 2003, Fields filed an application for DIB. Record at 395. She was awarded DIB on December 12, 2004, in accordance with a November 19, 2004, decision by Administrative Law Judge ("ALJ") Diane Moskal. Record at 366. Her two daughters were awarded child's benefits on January 8, 2005. Record at 358, 362, 390.

At the time she was awarded DIB, Fields was receiving Workers' Compensation total disability benefits from the Commonwealth of Pennsylvania. Record at 391. Accordingly, ALJ Moskal wrote: "Claimant testified to continued receipt of workers' compensation payments, so the statutory offset would apply." Record at 393.

In accordance with ALJ Moskal's decision, the award letter stated that Fields's DIB payments were to be offset by her Workers' Compensation payments. Record at 367. Moreover, the Record contains a "WC/PDB" Offset Datasheet dated December 8, 2004, which shows how the amount of the offset was calculated. Record at 392.

On September 25, 2009, the Pennsylvania Workers' Compensation Office ruled that Fields' work injuries had resolved into specific losses of her left arm and both legs. Record at 227, 229. The WC therefore awarded Fields specific loss benefits to replace her temporary total disability benefits. Record at 229 at ¶¶ 3 and 5.

In a letter dated November 10, 2012, the Social Security Administration ("SSA") informed Fields that she had been overpaid $22,311.00 in benefits "for July 2003 through October 2012." Record at 311. (This amount was later recalculated as $22,379.40; Record at 290). Fields filed a request for reconsideration, but it was denied on February 18, 2013. Record at 307. She then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 302.

While awaiting her hearing, Fields received letters from the SSA dated March 5, 2013, informing her that both daughters had also received overpayments "because of Jacqueline Fields['] Workers Compensation benefits." Record at 294, 298. She would therefore have to repay the amount of $117,372.80. Record at 16.

A hearing took place in this matter on July 18, 2014, before ALJ Nikki Flowers. Record at 398. Fields appeared without representation. Record at 400-401. She declined the ALJ's offer to continue the hearing until she could obtain a representative. Record at 401-402.

The ALJ stated at the hearing:

The general issue [before me] is whether you were overpaid benefits within the meaning of such in §204 of the Social Security Act and, if so, whether recovery of the overpayment may be waived.

The specific issues are whether you are without fault as defined by the Social Security regulations at 20 CFR §404.507 in causing the overpayment. And, if so, what [*sic* "whether"] recovery of the overpayment would, number one, defeat the purpose of Title II of the Act as defined in the Social Security regulations at 20 CFR §508. … And, number two, be against equity and good conscience as defined in the regulations at §404.509.

Record at 403. This was in accordance with 20 CFR §404.506, which provides that a claimant may obtain a waiver of her obligation to repay an overpayment if she is without fault and meets one of the other two considerations.

On November 13, 2014, the ALJ issued a written decision finding that Fields was liable to repay $117,372.80 in benefits. Record at 19. She construed Fields' principal argument to be that her DIB benefits were not properly offset against the Workers' Compensation benefits she received, because those payments were for a specific loss, and did not represent lost wages. The ALJ found, on the contrary, that in Pennsylvania, where Fields resided when she was injured, specific loss payments were appropriately offset. Record at 18-19.

However, the ALJ did not make any specific finding pursuant to 20 CFR §404.506, or cite that regulation. Instead, she construed the issue as "whether the claimant has been overpaid benefits." Record at 17.

3

The Appeals Council denied Fields' request for review on April 12, 2017, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Fields then filed this action. In it, she again maintains that specific loss is not subject to a DIB offset.

II.   Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

IV.   Discussion

A.   Specific Loss

ALJ Flowers was correct in concluding that under the Pennsylvania Workers' Compensation statute, specific loss benefits are subject to offset. In Krysztoforski v. Chater, the Court of Appeals for the Third Circuit looked to legislative history regarding the Social Security Act, as well as Pennsylvania caselaw, in reaching its decision that "permanent injury benefits clearly include compensation in the event of lost earnings and hence constitute disability payments for purposes of offset" under the Social Security Act. 55 F.3d 857, 860 (3d Cir. 1995).

In support of her argument that her specific loss benefits were not subject to offset, Fields has cited Turner v. Jones & Laughlin Steel Corporation, 398 A.2d 42 (Pa. 1978), in which the Pennsylvania Supreme Court stated that specific loss benefits would not be offset from a pension

a claimant received from his employer. Turner, however, did not decide whether these benefits could be offset from DIB, nor could it have, since federal law governs in determining whether an offset may be made against Social Security benefits. Krysztoforski, supra, at 859.

Before the ALJ, Fields cited Davidson v. Sullivan, 942 F.2d 90 (1st Cir. 1991), in which the Court of Appeals for the First Circuit decided that, under the New Hampshire workers' compensation statute, specific loss benefits did not constitute lost wages, and that therefore they could not be used to offset Social Security disability benefits. Of course, this case is not relevant because it interprets the New Hampshire workers' compensation statute, and not the law in effect in Pennsylvania. In any event, Davidson does not control the courts in the Third Circuit, which are bound by Krysztoforski.

Therefore, the ALJ was clearly correct in deciding that Fields' specific loss benefits were properly offset against her DIB. Record at 17.

B.   Reason for the Overpayment Determination

Despite the foregoing, however, ALJ Flowers' determination that Fields was overpaid is not supported by substantial evidence. Her determination as to the cause of the overpayment was clearly inaccurate. ALJ Flowers wrote:

> It was noted in the November 19, 2004 hearing decision issued by Social Security ALJ Diane C. Moskal of the Elkins Park PA Office of Hearings and Appeals … that the claimant testified to continued receipt of Workers' Compensation payments. ALJ Moskal concluded in her decision that the statutory offset provision would apply. However, it appears that ALJ Moskal's conclusion that the statutory offset provision would be applicable was erroneous. Specifically, the claimant was a resident of the Commonwealth of Pennsylvania at the time of her injuries. In making her argument to ALJ Moskal, the claimant erroneously relied on the statutory offset provision in New Hampshire.

Record at 18.

ALJ Flowers' determination that ALJ Moskal wrongly caused the overpayment by mistakenly causing offsets to cease is illogical. ALJ Moskal's statement that "the statutory offset would apply" obviously means that there *would* be an offset. Record at 393. It is perfectly clear that this is the way ALJ Moskal's decision was understood by the Agency, since – as discussed above – the award letter Fields received on December 12, 2004, specified that her DIB benefits *would* be offset by her Workers' Compensation payments. Record at 367. Therefore, even if the overpayment was the result of a mistaken failure to take an offset, ALJ Moskal's November 19, 2004, decision had nothing to do with it.

Also, ALJ Flowers' mention of the law of New Hampshire appears to be a reference to Davidson v. Sullivan, supra, the New Hampshire case upon which Fields has relied in arguing that specific loss benefits are not subject to the offset provision. No other New Hampshire law appears in the Record. But there is no evidence that Fields raised Davidson v. Sullivan in 2004 before ALJ Moskal. Why would she have? ALJ Moskal wrote her decision in 2004, four years before Fields began receiving specific loss benefits in 2009. In other words, there was simply no specific loss issue before ALJ Moskal which would have made Davidson relevant.

In sum, ALJ Flowers' conclusion that the overpayment was caused by ALJ Moskal's mistaken reliance on New Hampshire law to find that an offset could not be taken against specific loss benefits is at odds with the facts in two respects: (1) ALJ Moskal actually decided that an offset *would* be taken; and (2) there was no specific loss benefit issue before ALJ Moskal, and therefore no mention of New Hampshire law.

Because ALJ Flowers did not accurately determine why offsets were discontinued, she could not make a reasonable determination as to whether they should have been discontinued, i.e., whether or not the money paid to Fields constituted an overpayment for which the Agency could seek reimbursement. For this reason, remand is necessary for an accurate determination as to the nature of the alleged overpayment.

B.   Waiver

An individual from whom recovery of an overpayment is sought by the Social Security Agency is entitled to request waiver of recovery. 20 CFR §404.502a. To obtain recovery, an individual must offer evidence that (1) she is without fault in causing the overpayment; and that (2) recovery would either (a) defeat the purpose of Title II of the Social Security Act, or (b) be against equity and good conscience. 20 CFR §404.506. Waiver may be requested at any time. 20 CFR §404.506J(b) and (c).

"Defeating the purpose of Title II" means that compelling repayment from an individual would leave her without the income required for ordinary and necessary living expenses. 20 CFR §404.508. Recovery of an overpayment is "against equity and good conscience" when (a) the person from whom recovery is sought changed her position for the worse or relinquished a valuable right in reliance on the overpayment; or (b) the person did not receive any benefit from the overpayment because she was living in a separate household from the payee (this could not apply here, since Fields herself was the payee).

At the time of the hearing, the ALJ apparently believed that Fields had sought waiver of her repayment obligation, since she stated that the issues before her related to 20 CFR 404.506. Record at 403. In her decision, however (as discussed above), the ALJ did not discuss waiver,

and reframed the issue as simply whether Fields had received an overpayment. Record at 17. Therefore, it has not been determined whether Fields might be entitled to a waiver.

This may be because, in fact, Fields filed for reconsideration of the overpayment determination, but never sought a waiver. Record at 308. This is despite the fact that the Agency's notice to Fields of the denial of her claim for reconsideration did include information about her right to seek waiver. Record at 306.

Nevertheless, having undertaken to decide both whether Fields was overpaid benefits, and whether recovery could be waived, it is arguable that the ALJ should have made the second half of this determination. This is particularly true here, where Fields appeared *pro se*, and might have been unsure as to whether she remained entitled to request a waiver.

As above, remand is required for an accurate determination as to whether Fields was overpaid. If an overpayment is determined to have occurred, the ALJ should then determine whether Fields is eligible for a waiver of repayment. Prior to this decision, a date should be set for Fields to submit any evidence she may have in this regard, as required by 20 CFR §404.506(c). I note that the record as a whole contains no suggestion that Fields is at fault with respect to the overpayment.

V.	Conclusion

In accordance with the above discussion, I conclude that the decision of the ALJ should be reversed in part, and the matter remanded to the Agency for an accurate determination as to whether an overpayment occurred, and – if so – whether Fields is entitled to a waiver of repayment.

BY THE COURT:

/s/ Jacob P. Hart

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE